# UNITED STATES DISTRICT COURT
### for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched*
*or identify the person by name and address)*

Zonda Cellular Telephone ZM100
IMEI: 359578081794515

)
)
)    Case No.
)
)
)



FILED

FEB 2 6 2018

CLERK. U.S DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

18MJ0910

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
SEE ATTACHMENT A

located in the ____SOUTHERN____ District of ____CALIFORNIA____ , there is now concealed *(identify the person or describe the property to be seized)*:
SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| TITLE 8 U.S.C. 1324(a)(1)(A) | BRINGING IN, TRANSPORTING, AND HARBORING ALIENS |

The application is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kevin Van Luven, Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __2/26/18__

_____
*Judge's signature*

City and state:  San Diego, California

Hon. Mitchell D. Dembin, U.S. Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A SEARCH OF:

Cellular Telephones: Samsung SM-G935F; Zonda ZA509; Huawei Y520-U03; Huawei ALE-L23; Alcatel 1050A; Azumi A40Q; Zonda ZM100; Samsung SM-J106B; Samsung GT-E1086L

**AFFIDAVIT OF TASK FORCE OFFICER KEVIN VAN LUVEN IN SUPPORT OF SEARCH WARRANT**

I, Kevin Van Luven, Task Force Officer with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, having been duly sworn, depose and state as follows:

1.     I make this affidavit in support of an application for a search warrant in furtherance of a maritime alien smuggling investigation conducted by Department of Homeland Security, Homeland Security Investigations ("HSI") Special Agents and Task Force Officers for the following target property:  nine cellular telephones seized on February 7, 2018, from Joel RODRIGUEZ-Martinez ("RODRIGUEZ"), Javier GOMEZ-Guzman ("GOMEZ"), Filemon HERRERA-Beristain ("HERRERA"), Uzziel JIMENEZ-Jimenez ("JIMENEZ"), Gerardo LOPEZ-Cruz ("LOPEZ 1"), Daniel LOPEZ-Lopez ("LOPEZ 2"), Jacinto LOPEZ-Lopez ("LOPEZ 3"), Jose Armando SANCHEZ-Olivares ("SANCHEZ").  Cellular telephone 1 seized from RODRIGUEZ is, (1) Samsung SM-G935F Phone; Serial: R58J573802D (hereinafter **"Target Telephone 1"**).  Cellular telephone 2 seized from GOMEZ, is (1) Zonda ZA509 Phone; IMEI: 353575084084536 (hereinafter **"Target Telephone 2"**).   Cellular telephone 3 seized from HERRERA, is (1) Huawei Y520-U03 Phone; Serial: Q4G4TA1632810108 (hereinafter **"Target Telephone 3"**).  Cellular telephone 4 seized from JIMENEZ, is

(1) Huawei ALE-L23 Phone (hereinafter "**Target Telephone 4**"). Cellular telephone 5 seized from LOPEZ 1, is (1) Alcatel 1050A Phone; IMEI: 017971004176778 (hereinafter "**Target Telephone 5**"). Cellular telephone 6 seized from LOPEZ 1, is (1) Azumi A40Q Phone; Serial: U20160514020954 (hereinafter "**Target Telephone 6**"). Cellular telephone 7 seized from LOPEZ 2, is (1) Zonda ZM100 Phone; IMEI: 359578081794515 (hereinafter "**Target Telephone 7**"). Cellular telephone 8 seized from LOPEZ 3, is (1) Samsung SM-J106B Phone; Serial: RV1JB0G9TGL (hereinafter "**Target Telephone 8**"). Cellular telephone 9 seized from SANCHEZ, is (1) Samsung GT-E1086L Phone; Serial: RP6ZC50864W (hereinafter "**Target Telephone 9**").

2.    **Target Telephone 1** was seized from RODRIGUEZ after agents apprehended him in a black Toyota Sequoia in which RODRIGUEZ was attempting to transport nine illegal aliens to include one foot-guide, later identified as Miguel MIRANDA-Pio. It is believed that **Target Telephones 2-9** were seized from GOMEZ, HERRERA, JIMENEZ, LOPEZ 1, LOPEZ 2, LOPEZ 3 and SANCHEZ, after agents apprehended them while concealed in a black Toyota Sequoia in which RODRIGUEZ was attempting to transport the nine illegal aliens during an alien smuggling event on February 7, 2018. RODRIGUEZ and MIRANDA are being investigated for Bringing in, Transporting and Harboring Aliens, in violation of 8 U.S.C. § 1324(a)(1)(A), in the Southern District of California. Probable cause exists to believe that **Target Telephones 1-9** contain evidence relating to violations of Title 8, United States Code section 1324. The specified telephones are currently being stored in the Chula Vista Border Patrol Station Evidence Room, at the Chula Vista Border Patrol Station, 311 Athey Street San Diego, CA 92173.

3.    Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B (incorporated herein) will be found in the item to be searched as described in Attachment A (incorporated herein). These items may be or lead to: (1) evidence of the existence of alien smuggling or conspiracy to smuggle aliens in violation of 8 U.S.C.

1   § 1324; (2) contraband, fruits of crime, or things otherwise criminally possessed; and
2   (3) property designed or intended for use, or which is or has been used as a means of
3   committing criminal offenses.

### EXPERIENCE AND TRAINING

5   4.      I am a United States Border Patrol Agent-Intelligence within the United
6   States Department of Homeland Security (DHS), Customs and Border Protection
7   ("CBP"), United States Border Patrol (USBP). I have been employed as a USBP Agent
8   since November, 2010. I am presently assigned to the HSI Marine Task Force. I am a
9   graduate of the United States Border Patrol Academy at the Federal Law Enforcement
10  Training Center ("FLETC") in Artesia, New Mexico. I have received basic training in
11  investigating alien smuggling, identifying immigration violations, and enforcing
12  numerous immigration and customs laws within the United States.

13  5.      I am currently assigned to conduct investigations of criminal violations
14  relating to alien and narcotic smuggling.  I have participated in numerous alien and
15  narcotic smuggling-related investigations, many of which involved the arrest of persons
16  for alien and drug smuggling offenses.  In those cases, I conducted interviews with the
17  arrested persons and with their associates.  Through these interviews, I have gained a
18  working knowledge and insight into the activities and operations of alien and drug
19  smugglers.

20  6.      Through the course of my training, investigations, and conversations with
21  other law enforcement personnel, I am aware that it is a common practice for alien and
22  drug smugglers to work in concert with other individuals and to do so by utilizing
23  cellular telephones and portable radios to maintain communications with co-
24  conspirators in order to further their criminal activities.  I am also aware that it is a
25  common practice for alien and drug smugglers to communicate with the smuggled
26  aliens regarding smuggling arrangements and payment utilizing cellular telephones and
27  portable radios.  Conspiracies involving alien and drug smuggling generate many types
28  of evidence including, but not limited to, cellular phone-related evidence such as

3

voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, and phone numbers of co-conspirators and aliens to be smuggled.

7.     In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien and drug smuggling investigations, and the opinions stated below are shared by them.  Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

8.     Based upon my training and experience as a USBP Agent, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a.     Alien smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b.     Alien smugglers will use cellular telephones because they are able to actively monitor the progress of the illegal aliens while they are in transit.

c.     Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time the smuggled aliens will arrive at predetermined locations.

d.     Alien smugglers will use cellular telephones to direct drivers to synchronize a drop off and/or pick up time of the smuggled aliens.

e.     Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of USBP checkpoints.

f.     Alien smugglers will use cellular telephones to make arrangements with the smuggled aliens prior to the smuggling event, and to arrange for payment after the smuggling event.

**FACTS SUPPORTING PROBABLE CAUSE**

4

9.     On February 7, 2018, Border Patrol Agent Michael Trias, was conducting plain clothes, anti-smuggling duties within the Chula Vista Border Patrol Station's area of responsibility in an unmarked Border Patrol vehicle.  At approximately 6:00 a.m., Agent Trias was driving southbound on Britannia Boulevard when he observed a dark colored Toyota Sequoia being driven by a male wearing a hat, driving westbound slowly on Britannia Park Place and turning his head from side to side as if he was looking for something or someone.  Agent Trias parked his vehicle on the west end of the intersection of Britannia Boulevard and Britannia Park Place.  This area is frequently used by illegal aliens, their foot guides and load drivers to load the smuggled aliens into vehicles and further their illegal entry into the United States.

10.     Shortly after, Agent Trias drove to the intersection on Britannia Boulevard and Britannia Park Place, he observed the Toyota Sequoia and heard doors slam as if a number of persons had entered the Toyota Sequoia. He subsequently heard loud audible sound of tires screeching as the Toyota Sequoia moved away from the area.  The Toyota Sequoia was the only vehicle on the road at that time and all surrounding businesses were closed.  This area is not known for heavy vehicle/pedestrian traffic as it is an industrial park that caters specifically to semi-trailers during normal business hours.  On this night, the Chula Vista Border Patrol Stations area of operations was engulfed in dense fog. It has been my experience that Alien smugglers take advantage of this type of inclement weather because it provides concealment for undocumented individuals while they illegally enter the United States.   In addition, I was aware that other USBP agents were in pursuit of suspects who had illegally entered the U.S. through a hole in the border fence approximately a half a mile south of the Britannia Boulevard and Britannia Park Place intersection.

11.     Agent Trias drove northbound on Britannia Boulevard and just before approaching Airway Road he saw the same dark Toyota Sequoia driving erratically and dangerously.  At approximately 6:15 a.m., after observing the Toyota Sequoia drive through a red traffic light at the intersection of Airway Road and Britannia Boulevard,

Agent Trias contacted San Diego Sector Communications via his service radio, and requested a marked Border Patrol unit to conduct a traffic stop. Agent Trias continued to follow the vehicle in order mitigate public endangerment and provide backup to the responding marked Border Patrol unit.

12.    At the intersection of Britannia Boulevard and the State Route 905 on ramp, Agent Trias once again observed the Toyota Sequoia drive erratically and dangerously through a red traffic light. The vehicle subsequently proceeded to drive north towards State Route 905, driving dangerously weaving in and out of traffic and hastily changing lanes.    Shortly after, Border Patrol Agent Francisco Hurtado made notification via service radio that he would be responding in his marked Border Patrol vehicle. Agent Hurtado was able to get behind the dark Toyota Sequoia shortly after passing Beyer Boulevard on State Route 905.

13.    Agent Hurtado activated his emergency lights in an attempt to perform a vehicle stop. The Toyota Sequoia continued driving west on State Route 905 dangerously weaving in and out of traffic and gradually increasing speed. As Agents Hurtado and Trias continued pursuit as it merged north onto the Interstate 5 freeway. The Toyota Sequoia continued to drive dangerously placing itself and others around him in danger. After the driver of the Toyota Sequoia failed to yield to the marked Border Patrol unit, he made several attempts to get away from the pursuing Border Patrol Agents. While in pursuit at a high rate of speed northbound on the Interstate 5 freeway, the Toyota Sequoia erratically changed lanes and made a dangerous and abrupt exit onto L Street. Upon exiting, the Toyota Sequoia erratically and dangerously drove through a red traffic light at the intersection of L Street and Industrial Boulevard. The Toyota Sequoia continued driving dangerously, gradually increasing speed as it traveled south on Industrial Boulevard. The Toyota Sequoia drove through a red light at the intersection of Industrial Boulevard and Moss Street, and continued east onto Moss Street making a dangerous turn into oncoming traffic at the intersection of Moss Street and Broadway. Once on Broadway the Toyota Sequoia continued north driving at a

high rate of speed weaving in and out of traffic. As the vehicle approached the intersection of Broadway and L Street, it was still observed driving erratically as it drove through a red traffic light at the intersection.

14. As the Toyota Sequoia approached the intersection of L Street and Woodlawn Avenue, it lost control and subsequently crashed into a vehicle parked near the intersection of L Street and Woodlawn Avenue. At the time of the crash, debris, glass, and vehicle parts were observed flying everywhere. This area is located approximately eight miles west of the Otay Mesa, California Port of Entry and approximately eight miles north of the United States/Mexico International Boundary.

15. After the crash, multiple subjects exited the vehicle and attempted to run. Agent Hurtado was able to keep a visual on the driver of the vehicle, later identified as Joel RODRIGUEZ-Martinez, as he ran away from the crash. After a short foot pursuit, Agent Hurtado was able to apprehend RODRIGUEZ at 890 Colorado Avenue. Agent Hurtado then escorted RODRIGUEZ back to the accident scene where he was informed by other Agents that the remaining individuals had been arrested for being in the United States illegally. At approximately 6:31 a.m., Agent Hurtado placed RODRIGUEZ under arrest for 8 USC 1324 (Alien Smuggling).

16. While Agent Hurtado was engaged in his foot pursuit, other agents to include Agent Trias, Agent Rene Torrez, Agent Jose Alvarez, and Agent James Harlan apprehended the remaining nine individuals from the vehicle that were all determined to be illegal aliens and placed under arrest. During subsequent searches of all arrested subjects and their property by Border Patrol Agents, the nine cellular telephones referenced above were discovered and claimed by the corresponding subject. All individuals arrested were transported to the Chula Vista Border Patrol Station for further processing.

17. At the station, material witness interviews were conducted with all arrested subjects. Material witness interviews led to the discovery and identification of Miguel MIRANDA-Pio, as the foot guide of the group via photo lineups. MIRANDA will be

charged with 8 USC 1324 - Criminal Alien Smuggling.  In addition, all material witnesses stated that after illegally entering the United States, they were picked up by a single load vehicle until subsequently being arrested by Border Patrol Agents.

18.    It should be noted that MIRANDA was taken to the hospital for medical evaluation due to the collision involved in this incident. MIRANDA was later medically cleared by a physician for transportation and incarceration and returned to the Chula Vista Border Patrol Station at approximately 11:35 a.m.

19.    Based upon my experience and investigation in this case, I believe that RODRIGUEZ and MIRANDA as well as other persons as yet unknown, were involved in an on-going conspiracy to smuggle aliens.  Based on my experience investigating alien and drug smugglers, I also believe that **Target Telephones 1-9** may have been used to coordinate with co-conspirators, and the Material Witnesses, regarding the smuggling of illegal aliens, and to otherwise further this conspiracy both inside and outside the United States.

20.    Based upon my experience and training, consultation with other law enforcement officers experienced in alien and drug smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the alien smuggling activities of RODRIGUEZ, MIRANDA and their co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the cellular telephones described herein.

## SEARCH PROTOCOL

21.    It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and

8

rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

24. Following the issuance of this warrant, I will collect the subject cellular telephone and, with assistance if necessary from cellular telephone forensic examiners, will attempt to securely power the device, identify whether it is protected by a personal identification number (PIN), determine or circumvent the PIN and image or retrieve data subject to seizure pursuant to this warrant from the device. The search of the

9

1  device or of an image on the data on the device will be limited to identifying and seizing
2  data subject to seizure pursuant to this warrant and, in any event, will be limited to only
3  the information to be found on basic cellular telephones: digital, cellular, and/or
4  telephone numbers and/or direct connect numbers assigned to the device; call and direct
5  connect history information; list of contacts stored on the device; text messages stored
6  on the device; and, if equipped as a camera, photographs and videos stored on the
7  device.  In the event that I or other personnel lawfully conducting the analysis identify
8  information pertaining to crimes outside the scope of the warrant, such information will
9  not be used in any way unless a new warrant is obtained to search for such information.

10      25.   I, or any other duly authorized federal agent, will personally serve the
11  warrant requested above, and will be assisted by other duly authorized federal
12  investigators.

13  **CONCLUSION**

14      26.   Based on all of the facts and circumstances described above, I believe that
15  probable cause exists to conclude that **Target Telephones 1-9** were used to facilitate
16  alien smuggling.  **Target Telephones 1-9** were likely used to facilitate the offenses by
17  transmitting and storing data, which constitutes evidence, fruits, and instrumentalities
18  of violations of Title 8, United States Code, Section 1324.

19      27.   I also believe that probable cause exists to believe that evidence, fruits and
20  instrumentalities of illegal activity committed by RODRIGUEZ and MIRANDA
21  continue to exist on **Target Telephones 1-9**.

22      28.   Based upon my experience and training, consultation with other agents in
23  alien and drug smuggling investigations, consultation with other sources of information,
24  and the facts set forth herein, I know that the items to be seized set forth in Attachment
25  B (incorporated herein) are likely to be found in the property to be searched described
26  in Attachment A (incorporated herein).  Therefore, I respectfully request that the Court
27  issue a warrant authorizing me, a Task Force Officer, or another federal law

28

1  enforcement agent specially trained in digital evidence recovery, to search the item

2  described in Attachment A, and seize the items listed in Attachment B.

3

4

5

KEVIN VAN LUVEN
6  Task Force Officer
   Homeland Security Investigations
7
      SUBSCRIBED AND SWORN TO ME BEFORE THIS ___26___ DAY OF
8
   FEBRUARY, 2018.
9

10

11

12  HONORABLE MITCHELL D. DEMBIN
    United States Magistrate Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        11

ATTACHMENT A

<u>TO BE SEARCHED:</u>

Samsung SM-G935F Phone; Serial: R58J573802D (“**Target Telephone 1**”).

Zonda ZA509 Phone; IMEI: 353575084084536 (“**Target Telephone 2**”).

Huawei Y520-U03 Phone; Serial: Q4G4TA1632810108 (“**Target Telephone 3**”).

Huawei ALE-L23 Phone ( “**Target Telephone 4**”).

Alcatel 1050A Phone; IMEI: 017971004176778 ( “**Target Telephone 5**”).

Azumi A40Q Phone; Serial: U20160514020954 ( “**Target Telephone 6**”).

Zonda ZM100 Phone; IMEI: 359578081794515 ( “**Target Telephone 7**”).

Samsung SM-J106B Phone; Serial: RV1JB0G9TGL (“**Target Telephone 8**”).

Samsung GT-E1086L Phone; Serial: RP6ZC50864W (“**Target Telephone 9**”).


Target Telephones 1-9 are currently being stored in the JTT Office Evidence Room, at the Chula Vista Border Patrol Station, 311 Athey Street San Diego, CA 92173.

# ATTACHMENT B

The following evidence to be searched for and seized pertains to violations of 18 U.S.C. § 371 (Conspiracy) and 8 U.S.C. § 1324 (Alien Smuggling):

1.      Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

a.      tending to indicate efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

b.      tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate  efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

c.      tending to identify co-conspirators, criminal associates, or others involved in efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

d.      tending to identify travel to or presence at locations involved in the smuggling of aliens into the United States from Mexico or transporting illegal aliens within the United States such as drop off and pick up locations, stash houses load houses, or delivery points;

e.      tending to indicate payment for the smuggling of aliens into the United States or the transportation of aliens within the United States;

f.      tending to identify the user of, or persons with control over or access to, the subject phone; or

g.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.